# Dethridge v. Commonwealth.

(Decided January 16, 1931.)

G. DUNCAN MILLIKEN for appellant.

J. W. CAMMACK, Attorney General, and HOWARD SMITH GENTRY for appellee.

OPINION OF THE COURT BY COMMISSIONER DRURY—Affirming.

The appellant, Arthur Dethridge appeals from a judgment imposing upon him two years' confinement in the penitentiary for chicken stealing.

On Tuesday morning, February 4, 1930, Millard Manning missed 9 Rhode Island Red chickens, a rooster, 4 old hens, and 4 pullets. On the morning of Thursday the 6th, he learned that a stray chicken was near the farm of L. C. Alderson. He went there and got his chicken. He learned that Mr. Dethridge had been at the home of Alderson on the night of February 3rd and had made a call there for a wrecker to pull his automobile out of the mud. Manning then went to see Dethridge, ostensibly for the purpose of buying a calf, but really for the purpose of trying to find his chickens. He saw there 4 old hens and 3 pullets which he recognized as his. They were Rhode Island Red chickens, but Dethridge claimed they were part of a flock he had reared himself and he did give a very plausible account of how he came by these chickens and of the rearing thereof. When Manning called these chickens they did not respond to his call and when Dethridge or his wife would call them the chickens would run to them and gather around them.

Manning got the chickens and took them home and the testimony of Manning and his neighbors is that when the chickens were put out at his place they went at once to the barn where they were accustomed to roost and mingled with his other chickens and seemed perfectly at home. On the other hand, Dethridge produced testimony that Manning had a bucket of feed and that he fed these

chickens when he put them out, threw out some more feed on the way to the barn, and fed them again at the barn.

Dethridge accounts for his being on this road on the night of Feb. 3rd by a very plausible tale about going after medicine for the relief of one of his children that had been burned that evening by falling against the stove.

There is no direct evidence that Dethrdige stole these chickens, and whether Manning has really got seven of Dethridge's chickens or has merely recovered seven of his own chickens which Dethridge had stolen from him is a difficult question to determine, but that is not our problem. That was a question for the jury to determine from the evidence, and unfortunately for Dethridge it has found against him. This was simply a question of which set of witnesses was telling the truth, and the verdict of the jury will have to stand unless the court committed some error which probably caused the jury to reach an erroneous conclusion.

During the introduction of the evidence the defendant objected to one answer made by Manning, but did not move to strike it out, and when the court overruled his objection and properly did so, we think, Dethridge did not except to the ruling.

While Dethridge was being cross-examined, the attorney for the commonwealth, under the guise of cross-examination, said to him, "You don't steal chickens, do you?" And some questions were prefaced by that same statement. The defendant objected to that, and the court overruled his objection. Dethridge here complains of that as incompetent evidence against him. but it was not. It was, however, misconduct on the part of the commonwealth's attorney. The commonwealth's attorney in the cross-examination of a defendant should proceed in a dignified way, should be courteous to him, and should not take advantage of his position to abuse or insult the defendant. The court should not tolerate such a course, but we are unable to say that the defendant here was prejudiced by this, and, thus finding no prejudicial error in the record, the judgment is affirmed.